## Case No. 311.

### AMERICAN NICHOLSON PAVEMENT CO. v. ELIZABETH et al.

[6 Fish. Pat. Cas. 424;[1] 3 O. G. 522.]

Circuit Court, D. New Jersey. May 13, 1873.[2]

PATENTS FOR INVENTIONS — DIFFERENT FORMS IN ONE PATENT—REISSUE—DILIGENCE — ABANDONMENT—INFRINGEMENT.

1. When the commissioner grants a reissue, the courts must assume that he has examined and found that all the necessary conditions existed which authorized him to perform the act, and that the invention described in the reissued letters patent is the same as the invention claimed in the original letters patent.

2. As the two forms of pavement described in Nicholson's letters patent are related to a like subject, and in their nature are connected together, and as the elements necessary for the construction of the one are substantially used in the other, no objections can be properly raised because both forms are included in the one patent.

3. Where the patentee, when he applied for his patent, evidently attached more importance to one form of his invention than the other, but afterwards changed his opinion and reissued, laying more stress on the second form, such modification of opinion on his part does not disturb the fact that both forms were described, though imperfectly, in his first specifications.

4. The question of diligence is not an absolute, but a relative one, and must be considered in reference to the subject-matter of the experiments.

5. In Nicholson's invention, in all calculations as to cost, which necessarily involved the fact of durability, long use and lapse of time were essential ingredients.

[1][Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

[2][Affirmed by supreme court as to one defendant, but reversed as to the other two, in City of Elizabeth v. American Nicholson Pavement Co., 97 U. S. 126.]

. 6. Where the patentee allowed six years to elapse after putting down his pavement, before applying for a patent; *Held*, that in the absence of all intent, and in the face of a manifest contrary intent, the court will not infer, from the facts of the case, that there was any such public use of the invention, or any such dedication or abandonment, by the inventor, as would avoid the patent.

[See note to American Nicholson Pavement Co. v. City of Elizabeth, Case No. 309.]

7. The use of the invention described and claimed in letters patent for improved pavement, granted Brocklebank and Trainer, July 12, 1869, is an infringement of the first and second claims of complainant's patent.

8. If it is granted that these additions contained in this patent are valuable improvements, they are nevertheless grafted upon the Nicholson pavement, and cannot be used in connection with it without the consent of its owners.

[9. Cited in American Nicholson Pavement Co. v. City of Elizabeth, Case No. 309, to the point that a combination producing a new and useful result is patentable, although no one of its parts is new.]

[In equity. Bill by the American Nicholson Pavement Company against the city of Elizabeth, N. J., George W. Tubbs, and the New Jersey Wood Paving Company, for an injunction and an account for the alleged infringement of reissues of patent No. 11,491. Motion for provisional injunction was denied, provided defendants give bond for a stated sum. American Nicholson Pavement Co. v. City of Elizabeth, Case No. 312. Heard upon the merits. Decree for complainant. Subsequently, upon exceptions to the master's reports, a decree was entered for complainant for a specific amount. Id. 309. Defendants thereupon appealed to the supreme court, where that decree was reversed as to the city of Elizabeth and George W. Tubbs, but affirmed as to the New Jersey Wood Paving Company, the other defendant. City of Elizabeth v. American Nicholson Pavement Co., 97 U. S. 126. For a report of hearing upon an application to determine the amount of security to be given an allowance of appeal to the supreme court, see American Nicholson Pavement Co. v. City of Elizabeth, Case No. 310.]

The claims of the reissue are as follows: "1. Placing a continuous foundation or support, as above described, directly upon the roadway; then arranging thereon a series of blocks, having parallel sides, endwise in rows, so as to leave a continuous narrow groove or channel-way between each row, and then filling said grooves or channel-ways with broken stone, gravel, and tar, or other like materials. 2. I claim the formation of a pavement by laying a foundation directly upon the roadway, substantially as described, and then employing two sets of blocks—one a principal set of blocks that shall form the wooden surface of the pavement when completed, and an auxiliary set of blocks or strips of board, which shall form no part of the surface of the pavement, but determine the width of the groove between the prin-

cipal blocks, and also the filling of said groove, when so formed between the principal blocks, with broken stone, gravel, and tar, or other like material. 3. Placing a continuous foundation or support, as above described, directly upon the roadway, and then arranging thereon a series of blocks having parallel sides endwise in a checkered manner, so as to leave a series of checkered spaces or cavities between said blocks, and then filling said checkered cavities with broken stone, gravel, and tar, or other like material. 4. I claim the formation of a pavement by laying a foundation directly upon the roadway, substantially as above described, and then employing two sets of blocks, viz.: One a principal set of blocks that shall form the wooden surface of the pavement, and an auxiliary set of blocks that shall form no part of the wooden surface of the pavement, but determine the dimensions of the tessellated cavities between the principal blocks, and then filling said tessellated cavities with broken stone, gravel, and tar, or other like material." The issues in the case and the material facts are fully set forth in the opinion of the court.

C. A. Seward and B. Williamson, for complainants.

C. F. Blake and C. M. Keller, for defendants.

NIXON, District Judge. This is a bill in equity for an injunction and an account, for an alleged infringement by the defendants of a patent granted to Samuel Nicholson, for an improvement in wooden pavements, on August 8, 1854. The bill set forth that the said Nicholson surrendered the original letters patent issued to him as aforesaid, and obtained a reissue upon corrected descriptions and specifications, December 1, 1863; that he afterward surrendered these reissued letters patent, and obtained another reissue on August 20, 1867; that he died intestate on January 6, 1868; and that letters of administration were duly issued to George T. Bigelow, who, as administrator, applied to the commissioner of patents, by petition, on July 7, 1868, for a renewal and extension of said patent, and that the same was renewed and extended for the period of seven years from August 8, 1868; that by mesne assignments in writing from the said Bigelow, administrator, etc., the complainant had become the sole owner of the said extended patent for the state of New Jersey, except so much of said state as is embraced within the corporate limits of Jersey City. The bill further alleges that the validity of the said original and reissued letters patent has been settled and established by long and extensive use and by public acquiescence, and also by judicial determination, and that the defendants have infringed the same by constructing and using a wooden pavement or pavements in the city of Elizabeth, embracing the invention or improvement contained

in the last reissued letters patent, or the substantial or material parts thereof.

The answer of the defendants sets up substantially these defenses:

1. They deny that Samuel Nicholson was the original and first inventor of the improved wooden pavement described in his letters patent.

2. They allege that the reissued letters patent are fraudulent and void, as covering and including many things not invented by Nicholson, and not described and claimed in his original letters patent.

3. That the complainant's patent is void for want of novelty.

4. That the alleged invention was in public use, with the knowledge and consent of Nicholson, long prior to his application for letters patent, and that such public use worked an abandonment and dedicated the invention to the public.

Admitting that they had constructed and laid, and were then constructing and laying, certain wooden pavements in the city of Elizabeth, under and in accordance with letters patent granted to the defendants, Brocklebank and Trainer, dated January 12, 1869, they deny that by so doing they have infringed upon the rights of complainants. I have examined the testimony taken by the parties, and have given to the arguments of counsel the attention which their marked ability and learning, and the large interests involved, seemed to demand; and I will briefly state the conclusions that I have reached, without stopping now to detail the reasons which led me to such conclusions.

The complainant's patent, if valid, is doubtless for a combination. The several parts that make up the structure are:

1. A continuous foundation directly upon the roadway.

2. A series of blocks, with parallel sides, standing endwise in rows, that form the wooden surface of the pavement.

3. An auxiliary set of blocks or strips of board, which form no part of the surface, but determine the width of the grooves between the principal blocks.

4. The filling of the grooves, when so formed, between the principal blocks with broken stone, gravel, and tar, or other like material.

It is not claimed that any one of these parts is new, but that in their combination they produce a new and useful result.

1. Was Nicholson the original and first inventor, or is the patent void for want of novelty? I have carefully examined the copies of specifications and the large number of models produced, representing the pavements described in eighteen English patents issued previous to the date of the Nicholson patent; and, while nearly all of them have one or more of its elements, I find that none of them, except perhaps the Hosking patent, to which I shall allude hereafter, suggests the combination which Nicholson has made.

There are strong presumptions in favor of the novelty of Nicholson's invention. The issue of the patent, its reissue, its extension by the commissioner, its long use and the public acquiescence, the judgment of competent legal tribunals, where the question of its novelty was directly involved—are all facts to be taken into the account. The burden is upon the defendants to rebut and overthrow these presumptions, which, in the opinion of the court, they have failed to do.

2. Are the reissued letters patent fraudulent and void because they cover and include more than Nicholson invented, described, and claimed in his original letters patent? The patent act authorized a surrender of the original letters and a reissue for the residue of the term, when the patent first granted should be inoperative or invalid by reason of a defective or insufficient description or specification, or by reason of the patentee claiming in his specification, as his own invention, more than he had a right to claim as new, if the error had arisen from inadvertency, accident, or mistake, and without any fraudulent or deceptive intention. It is an appeal to the judgment of the commissioner, and when he grants a reissue, the court must assume that he has examined and found that all the necessary conditions existed which authorized him to perform the act, and that the invention described in the reissued letters patent is the same as the invention claimed in the original letters patent. The only exceptions to such an inference are, where it appears upon the face of the patent itself that the commissioner has clearly exceeded his authority, or where the new patent has been procured by fraud or by collusion between the commissioner and the patentee. There is no proof of fraud or collusion, and a comparison of the specification and claim of the original patent with the corrected and amended description of the two reissues, establishes the fact, I think, beyond question, that he included nothing in the latter which was not fairly indicated and suggested in the former. The original patent was for improved wooden pavements. He specifies and claims therein the invention of a pavement which may be constructed in one of two forms—either by using the long and short blocks, or "by arranging the long blocks side by side and in rows transversely of the roadway, and with spaces between each two rows of them, in each of which spaces a strip of board may be introduced, the width of the board being equal to about half the length of the blocks." As these are related to a like subject, and in their nature are connected together, and as the elements necessary for the construction of the one are substantially used in the other, no objections can be properly raised, because both forms are included in the one patent. It is quite evident that when the first patent was applied for, and the first surrender and re-

issue made, the inventor attached more importance to, and expected greater results from, the former than from the latter mode of construction; but his experiments afterward changed his views in this respect, and in his reissue of August 20, 1867, his first and second claims are for the pavement with continuous transverse grooves made by the introduction of boards, for the infringement of which the present suit is brought. But such modification of opinion on his part as to their relative value, does not disturb the fact that both forms were described, although imperfectly, in his first specifications.

3. Has there been such a public use of the invention, such a dedication of it to the public, or such an abandonment by the patentee, as to void the patent? As these acts are closely related to each other in their essential qualities, and as the several questions grow out of one transaction, I shall consider them together. The transaction was this: The inventor was the treasurer of the Boston and Roxbury Mill Corporation—a private company chartered by the legislature of Massachusetts on June 14, 1814. The act incorporating it is made an exhibit in the case, and it appears from the third section that it was authorized to make and finish a dam from Charles street, in Boston, to the upland at Sewall's Point, in Brookline; to connect the different parts thereof by bridges and causeways so as to render the same a good and substantial road, suitable for the passing of men, loaded teams, and carriages of all kinds; and, when finished, railed at the sides and furnished with lamps, to receive tolls for passing over the same. It was a private road over the dam, about thirty feet in width and one mile in length, with two bridges, and all under the exclusive control of the corporation. There was a toll-gate and house on the southerly side of the road, near one of the bridges. Nicholson was appointed treasurer of the company in 1833, and while acting in that position—to wit, on August 4, 1847—he filed a caveat in the office of the commissioner of patents. His petition represents that "he has discovered or invented certain new and useful improvements in street or road pavements, and that he was then engaged in making experiments for the purpose of perfecting the same, preparatory for depositing at the patent office of the United States a correct specification thereof, in view to obtain letters patent therefor. He desires to obtain an exclusive property in his said invention or discovery, and prays that said caveat may be considered as the preliminary application or petition required by law to be made in order to obtain letters patent; and that his right in the said invention or discovery may be protected until he shall have matured the same." In the description annexed to the caveat, he states his invention or improvement to be as follows:

"Wooden blocks are cut from joists of about four inches square, one-half of which are cut eight inches long, the other half are cut four inches long. They are placed side by side on the prepared earth, the ends being upward, and in alternate position of long and short blocks, so that no two blocks of the same length will stand together, but so as to present a checkered surface. The lower ends being on a level, the upper will present alternate open squares of about four inches by four inches deep. Into said openings a small quantity of coarse salt is first put, then small broken stone is firmly rammed, so that the whole surface of the pavement is firm and level; then tar is poured over the whole surface, after which a sprinkling of sand or gravel. * * * Instead of broken stone and tar, used in the spaces above named, any other material or cement may answer as well, the design being to use something which will expand as the wood contracts, by which a hard surface prevents water from penetrating to rot the wood. * * * The earth may be prepared to receive the pavement, by covering the surface with paper saturated with tar or other preventive to moisture rising to rot the under surface of the blocks." The checkered pavement only is here specifically described, but the combination for which he afterward received his patent is suggested. And that this combination was in his mind, is proved by the fact that in the following summer, and as he stated to the witness Nutting, at his own expense, he caused to be laid on the dam opposite to the toll-house a piece of wooden pavement about seventy-five feet in length and of the width of the turnpike road, constructed in three different forms, to wit: 1. The checkered form, with long and short blocks. 2. The transverse channel form, with long blocks and strips, and with concrete filling. 3. The circular form, composed of small round logs of equal length set close together, with the intervening spaces filled with concrete. The foundation of a part was composed of boards or wood, and in other places it consisted of tar and sand. Both modes were used to ascertain, by experiment, which would best accomplish the desired results of an even, solid earth-bed, and a preventive of moisture being absorbed from the ground by the under blocks. Section 12 of the act of July 4, 1836, under which the foregoing caveat was filed, authorizes any person who shall have invented any new art, machine, or improvement thereof, and shall desire further time to mature the same, upon payment of twenty dollars, to file in the patent office a caveat, setting forth the design and purpose thereof, and its principal and distinguishing characteristics, and praying protection of his right till he shall have matured his invention. Such caveat is filed in the confidential archives of the office, and preserved in secrecy. The obvious design of this sec-

tion is to afford to inventors the opportunity of perfecting their discoveries and inventions. To prevent an abuse of the privilege, it is further provided that if an application is made by any other person, within one year from the time of filing the caveat, for a patent of any invention with which it may in any respect interfere, it shall be the duty of the commissioner, to deposit the descriptions, specifications, drawings, and model in confidential archives of the office, and to give notice by mail to the person filing the caveat of such application, who shall, within three months after receiving the notice, if he would avail himself of the benefits of his caveat, file his description, specifications, drawings, and model. If no such application is made, the caveator has a reasonable time in which to mature his invention or discovery; and when his letters patent are issued, if he have used due diligence, he has the right to have his matured invention incorporated into his patent, and to supersede those that have intervened between the date of his first discovery and his subsequent taking-out of the patent. Curt. Pat. § 270. It is impossible to read the testimony in reference to laying this section of the pavement upon the dam, and the conduct and declarations of Nicholson respecting it, without reaching the conclusion that he was making an honest experiment, and that the caveat was filed by him for protection while he was engaged in it. It was a private corporation, and the roadway was under his control as treasurer. It was a favorable spot to test the strength and durability of the pavement, because heavily laden teams stopped and started in front of the toll-gate. He was not exposing to the public the mode of its construction, because that could not be learned from the portion exposed to the public view, and no one had a right to disturb it. But he allowed six years to elapse after putting down the three forms of pavement before he applied for the patent. Was this using reasonable diligence? The question of diligence is not an absolute, but relative one, and must be considered in reference to the subject-matter of the experiments. Could the value and practical utility of such an invention be sooner ascertained? In all calculations as to cost, which necessarily involved the fact of durability, long use and lapse of time were essential ingredients. In the absence of all intent, and indeed in the face of a manifest contrary intent, I am not willing to infer from the facts of the case that there was any such public use of the invention, or any such dedication or abandonment, by the inventor, as would avoid the patent afterward issued to Nicholson. As the foregoing view of the legal effect of the caveat, and the experiments under it, and the patent afterward issued, carries the invention of Nicholson back to a period of time antedating the English patent of Hosking, it does not seem necessary for me now to consider whether or not the former infringes the latter. It will hardly be contended that when Nicholson laid on the Milldam road his pavement, with long blocks and transverse slips and grooves, in the month of July, 1848, he derived his knowledge of such a combination of elements from a patent, the specifications of which were not enrolled in the foreign office until March, 1850.

4. The only question remaining is the one of infringement. The defendants acknowledge that they have constructed and laid, and are constructing and laying, the pavement in the city of Elizabeth, which the complainants, in their bill, allege infringes their patent, but justify under certain letters patent issued to two of the defendants, Brocklebank and Trainer, on January 12, 1869. I have examined this patent and the specifications and claim annexed to it, and, conceding all that the patentees claim for it, its use must be regarded as an infringement of the combination embraced in the complainant's patent. They state, in their schedule, that "the invention relates to improvements in wood pavements, and consists in an improved arrangement of the same, whereby the flooring is strengthened and adapted for the better securing of the vertical blocks to the flooring." They then describe the flooring, vertical blocks, strips between the blocks secured to the floor by nailing, and spaces between the blocks and above the strips filled with tar, gravel, cement, or other substance in the usual manner. Their claim is for "the combination of the bed, transverse strips, and vertical blocks, when the latter are rebated, either on one or both sides, and either with dovetail rebates or otherwise, and the said strips fitted to the rebates and secured to the bed, all substantially as and for the purpose specified." If you add to this the filling of the grooves, or spaces between the vertical blocks and above the strips, with some concrete substance, which must be done before the pavement is of any practical value, you have undoubtedly the Nicholson combination, having added to it, however, rebates upon one or both sides of the blocks of dovetail or vertical form, which addition, it is claimed, is an improvement, in more securely fastening to the flooring both the blocks and strips, and in the equalization of the pressure upon the pavement, and its distribution over a larger surface. If it be granted that these additions are valuable improvements, they are nevertheless merely grafted upon the Nicholson patent, and can not be used in connection with it without the consent of its owners. The affidavits of Brocklebank and Trainer, taken in 1868, to be used upon the application of the administrator of Nicholson for an extension of the Nicholson patent, and exhibited in this case, fully disclose the estimate in which the patent was held by these defendants. They not only recognize its

novelty, but are very extravagant in their praises of its utility and value. Not mentioning their specification of its merits in particular cases, they are of opinion that its general introduction into the streets of the cities and towns of the United States would save to the people in various ways, in the next seven years, from five to seven hundred millions of dollars. If it be commendable in them to strive to make it more useful by improvements, it is hardly just that they should seek to rob such a benefactor of his race of the glory of his invention, or deprive his legal representatives of the profits from the extension, which they did so much, I doubt not honestly, to obtain. I am of the opinion that the patent of the defendants infringes the first and second claims of the extended patent of the complainant, and that a decree should be entered according to the prayer of the bill.

[NOTE. For a note in reference to the patent involved in this case, see American Nicholson Pavement Co. v. City of Elizabeth, Case No. 309.]